J2PITCHER, Judge.
Defendant, H.M. “Mike” Cannon, appeals from the trial court’s judgment in favor of Doug Welborn, Clerk of Court for East Baton Rouge Parish, ordering Mr. Cannon to pay the sum of $84,277.46, which represented the amount Mr. Cannon' used from the Clerk’s Salary Fund to pay his legal fees.
BACKGROUND
In 1989, H.M. “Mike” Cannon (Mr. Cannon) was the Clerk of Court for East Baton Rouge Parish. During this time, the Office of the Legislative Auditor performed a spe *494 cial purpose examination of Mr. Cannon; in his capacity as the East Baton Rouge Parish Clerk of Court, for the period from July 1, 1986 through February 28,1989. The examination was performed to review specific items, such as travel expenses incurred by the Clerk of Court’s office and to review transactions from the Clerk’s Salary Fund and General Fund. As a result of the examination, the Office of the Legislative Auditor issued a report on June 21, 1989. A copy of the report was sent to the Governor, the Attorney General, the East Baton Rouge Parish District Attorney and the Clerk of Court for East Baton Rouge Parish.
Cheney Joseph, who was the First Assistant District Attorney for East Baton Rouge Parish and subsequently, the acting District Attorney for East Baton Rouge Parish during this time, testified that shortly after receiving a copy of the report, the Office of the Attorney General and the District Attorney’s Office began a joint investigation to determine if there was any evidence of criminal activity by Mr. Cannon or other individuals.
On September 20, 1990, an indictment was filed in the Nineteenth Judicial District Court for the Parish of East Baton Rouge (state court), charging Mr. Cannon with one count of conspiracy to commit public payroll fraud, in violation of LSA-R.S. 14:26 and 14:138(2); four counts of public payroll fraud, in violation of I3LSA-R.S. 14:138(2); and one count of unauthorized use of a movable, in violation of LSA-R.S. 14:68. Mr. Cannon was also indicted in United States District Court for the Middle District of Louisiana (federal court) with one count of wire fraud, in violation of 18 U.S.C. § 1343.
Bruce Cannon, the Chief Deputy Clerk of Court for East Baton Rouge Parish, was indicted in state court on one count of conspiracy to commit public payroll fraud, in violation of LSA-R.S. 14:26, 14:138(2); one count of public payroll fraud, in violation of LSA-R.S. 14:138(2); and one count of unauthorized use of a movable, in violation of LSA-R.S. 14:68. Bruce Cannon was also indicted in federal court for one count of wire fraud, in violation of 18 U.S.C. § 1343; and one count of aiding and abetting, in violation of 18 U.S.C. § 2.
Nick Guzzardo, the Executive Administrator to the Clerk of Court for East Baton Rouge Parish, was also indicted in state court for one count of conspiracy to commit public payroll fraud, in violation of LSA-R.S. 14:26 and 14:138(2); and one count of public payroll fraud, in violation of LSA-R.S. 14:138(2). Mr. Guzzardo was also indicted in federal court for one count of mail fraud, in violation of 18 U.S.C.'§ 1341; and one count of aiding and abetting, in violation of 18 U.S.C. § 2.
Subsequently, Mr. Cannon, Bruce Cannon and Mr. Guzzardo each entered into a plea agreement in both state and federal court. As a result of the plea agreement, Mr. Cannon pled no contest to one count of unauthorized use of a movable in state court. In addition, Mr. Cannon pled guilty to one count of wire fraud in federal court.[1] Bruce Cannon pled guilty to one count of unauthorized use of a movable in state court and pled guilty to one count of wire fraud in federal court. Mr. Guzzardo pled guilty to one count of public payroll fraud and one count Uof conspiracy to commit public payroll fraud in state court. Mr. Guzzardo also plead guilty to one count of mail fraud in federal court. As a part of each plea agreement, it was agreed that Mr. Cannon, Bruce Cannon and Mr. Guzzardo would not be prosecuted on the remaining counts.
PROCEDURAL HISTORY
On July 24, 1991, Philip N. Burt (Mr. Burt), in his capacity as the East Baton Rouge Parish Clerk of Court, filed suit against Mr. Cannon, the former Clerk of Court for the Parish of East Baton Rouge. In the petition, Mr. Burt alleged that while Mr. Cannon was serving as Clerk of Court for the Parish of East Baton Rouge, he misappropriated, misapplied, converted, misused or otherwise took funds in the amount of $125,910.00 from the Salary Fund and other *495 bank accounts of the Clerk of Court’s office, in violation of LSA-R.S. 42:1461 and Louisiana Constitution art. 7, § 14. Mr. Burt alleged that this sum of $125,910.00 represented $84,277.46 used in the criminal defense of Mr. Cannon, $10,000.00 used in the criminal defense of Bruce Cannon, and $31,638.25 used in the criminal defense of Mr. Guzzardo. Mr. Burt contended that all of the funds payable on behalf of Bruce Cannon and Mr. Guzzardo were authorized by Mr. Cannon and payable out of the Salary Fund and other accounts of the Clerk of Court’s office. Mr. Burt prayed for a judgment, ordering Mr. Cannon to pay the sum of $125,910.00.
On September 9,1991, Mr. Cannon filed an answer and reconventional demand. In his answer, Mr. Cannon admitted that, in his former official capacity as the Clerk of Court, he authorized the payment of legal fees incurred by his office. Mr. Cannon asserted that funds were utilized to pay for the legal services and advice related to an ongoing legislative auditor’s investigation of the Clerk of Court’s office and its employees, as permitted by law. Mr. Cannon further asserted that the majority, if not all, of the legal fees at issue pertained to accusations, allegations and Ificharges of official misconduct by Mr. Cannon and other employees of the Clerk of Court’s office that “did not result in any indictment or were in connection with charges for which Mr. Cannon was acquitted by dismissal,” and as a consequence, the payment of such legal fees by the Clerk of Court’s office was a permissible expenditure of public funds.
Through his reconventional demand, Mr. Cannon asserted that he was indicted in September and November, 1990, and all of the indictments pertained to and/or arose out of his employment with the Clerk of Court’s office. Mr. Cannon asserted that he employed Richard C. Guerriero, Jr. to represent him in his criminal proceedings, and as a result of this representation, he incurred and paid for certain legal expenses out of his personal funds. Mr. Cannon alleged that he was only convicted on two of the five counts that he was charged with, and the remaining charges were dismissed. Mr. Cannon further alleged that he was entitled to a reimbursement from the Clerk of Court’s office for the legal fees relating to all charges, counts, and indictments pertaining to or arising out of his official status which resulted in either a dismissal, acquittal, nonconviction or were quashed.
On April 3,1993, it was ordered that Doug Welborn, in his official capacity as Clerk of Court for East Baton Rouge Parish, be substituted as party plaintiff in the case, in lieu of his predecessor in office, Mr. Burt.
Subsequently, Mr. Cannon filed an amended answer, alleging that he was entitled to a qualified immunity from all claims asserted because all of his actions were discretionary actions or functions taken by him in his official capacity as the Clerk of Court for East Baton Rouge Parish.
Trial was held on August 16 and 17, 1995. Following the trial, judgment was rendered in favor of Mr. Welborn in the amount of $84,277.46, together with legal interest thereon from the date of judicial demand. The trial court further ordered 16the dismissal of Mr. Cannon’s reconventional demand.[2] It is from this judgment that Mr. Cannon appeals and alleges the following assignments of error:
1. The trial judge erred in failing to apply applicable law.
2. The trial judge erred in failing to hold that the payment of legal fees [was] legitimate, where the services were rendered to defendant-appellant and certain deputy clerks prior to the initiation of any prosecutions and were unrelated to any charges later prosecuted.
3. The trial judge erred in failing to grant recovery from plaintiff-appellee, upon defendant-appellant’s showing that he as clerk of court had personally incurred the cost of legal services rendered in connec *496 tion with certain criminal charges formally instituted but not resulting in conviction.
4. The trial judge erred in failing, upon the showing of the legitimacy of the payments out of the clerk’s salary fund for legal services rendered to defendant-appellant and certain deputy clerks, to dismiss plaintiff-appellee’s demands.
Mr. Welborn filed an answer to the appeal, alleging the following assignment of error:
1. The trial court erred in finding that Bruce Cannon and Nick Guzzardo were proper parties as to seek repayment of legal fees paid by the Clerk of Court.
ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO
In Assignments of Error Numbers One and Two, Mr. Cannon contends that the trial court erred in (1) failing to apply the applicable law; and (2) failing to hold that the payment of legal fees was legitimate, where (a) the services were rendered to Mr. Cannon and certain deputy clerks prior to the initiation of any prosecution, (b) the services were related to a legislative auditor’s report from which no charges in the indictment stemmed, and (c) the services were for charges that were “acquitted by dismissal.”
I7LSA-R.S. 13:5108.2 provides, in pertinent part, as follows:
A. (1) As used in this Section, an official, officer, or employee of the state means such a person holding office or employment:
# tj: sH :}: * #
(c) In any of the family, juvenile, or judicial district courts of the state or in the offices of the judicial administrators thereof.
LSA-R.S. 13:5108.2 provides as follows:
A. Notwithstanding any other provision of this Part, payment of any legal fees associated with the defense of any official, officer, or employee of this state or the Greater New Orleans Expressway Commission for any criminal action shail not be made except as provided in Subsection B.
B. Payment of legal fees for defense of an official, officer, or employee shall not be made from public monies through the office of the treasurer, from general appropriations, or out of special funds, whether state, federal, or self generated, unless:
(1) The defendant in a criminal matter is acquitted or the proceedings are dismissed, and
(2) Payment is authorized by a specific act of the legislature appropriating funds for such payment.
In the present case, Mr. Cannon was a public official under LSA-R.S. 13:5108.2 and was entitled to have his defense fees paid from public monies if the following criteria were met: (1) there is an acquittal of the criminal matter or the proceedings are dismissed and (2) payment is authorized by a specific act of the legislature appropriating funds for such payment.
In reviewing the first criterion, the record reflects that Mr. Cannon’s criminal matter did not result in an acquittal or a dismissal of the proceedings. An “acquittal” is defined as “[t]he legal and formal certification of the innocence of a person who has been charged with [a] crime; a deliverance or setting free a person from a charge of guilt; finding of not guilty.” Black’s Law Dictionary 23 (5th ed. |sl979). A “dismissal” is defined as “[a]n order or judgment finally disposing of an action, suit, motion, etc., without trial of the issues involved.” Black’s Law Dictionary 421 (5th ed. 1979). The resolution of Mr. Cannon’s criminal matter does not fall within either definition. Instead, Mr. Cannon’s criminal matter was resolved by way of a plea bargain.[3] Thus, Mr. Cannon does not meet the first criterion, entitling him to have his legal fees paid with public monies.
In addition, the record does not support Mr. Cannon’s contentions. The record re *497 veals that Mr. Cannon hired John Digiulio (Mr. Digiulio) in July, 1989 to represent him and paid him a total of $84,277.46 in legal fees from the Clerk’s Salary Fund. The record reflects that Mr. Digiulio was hired by Mr. Cannon after the legislative auditor’s report (report) was issued on June 21, 1989, containing all of Mr. Cannon’s responses to the report therein. Mr. Digiulio testified that he did not work on any responses to the report because it was already prepared when he came on board. Mr. Digiulio stated that during his representation, his main concern was with Mr. Cannon’s criminal exposure, and he reviewed the report for potential criminal liability.
Even though Mr. Digiulio’s representation ended prior to the indictment, Mr. Digiulio testified that early in his representation, he investigated allegations of payroll fraud, which involved the use of clerk employees for Mr. Cannon’s private business, Postal Press, and other allegations that did not derive from the report, | ¿including other activities related to Mr. Cannon’s private business. The evidence reflects that Mr. Cannon was ultimately charged in state court by an indictment with four counts of public payroll fraud, one count of conspiracy to commit public payroll fraud, and one count of unauthorized use of a movable, which involved the use of computer software purchased with funds from the clerk’s office in his private business. Clearly, Mr. Digiulio’s representation was a part of the criminal matter that resulted in Mr. Cannon’s subsequent indictment.
Even though the record reflects that Mr. Digiulio did not investigate the allegation of unauthorized use of a movable, the only charge to which Mr. Cannon pled, Mr. Cannon is still not entitled to use public monies for the payment of his legal fees. According to Mr. Cannon, as part of his plea agreement, it was agreed that the remaining charges would be dismissed and no potential charges stemming from the criminal matter would be brought against him in the future. Thus, his remaining charges probably would not have been dismissed but for the plea bargain. We certainly do not believe that the legislature envisioned that public monies could be used for the payment of legal fees on criminal charges that were dismissed or never brought by indictment because of a plea bargain.
Instead, we believe that, by enacting LSA-R.S. 13:5108.3 B, the legislature intended to encourage individuals to seek public office with the assurance that if they are forced to defend their actions while serving in their official capacity, they would be entitled to reimbursement upon exoneration in accordance with subsection B. Thus, based upon the particular circumstances before us, we cannot say that the trial court erred in ordering Mr. Cannon to pay $84,277.46, together with legal interest thereon from the date of judicial demand.
hoASSIGNMENTS OF ERROR NUMBERS THREE AND FOUR
Because of our finding in Assignments of Error Numbers One and Two, a discussion of Assignments of Error Numbers Three and Four is unnecessary.
MR. WELBORN’S ANSWER TO THE APPEAL
In Mr. Welborn’s answer to the appeal, he contends that the trial court erred in finding that Mr. Cannon was not the proper party defendant to seek reimbursement for the legal fees paid by the Clerk of Court’s office on behalf of Bruce Cannon and Mr. Guzzardo. Mr. Welbom argues that Mr. Cannon’s authorization of the use of the monies from the Clerk’s Salary Fund was in violation of LSA-R.S. 42:1461 A.
LSA-R.S. 42:1461 A provides, in pertinent, as follows:
A. Officials, whether elected or appointed and whether compensated or not, and employees of any “public entity”, which, for purposes of this Section shall mean and include any department, division, ... or the office of any sheriff, district attorney, coroner, or clerk of court, by the act of accepting such office or employment assume a personal obligation not to misappropriate, misapply, convert, misuse, or otherwise wrongfully take any funds, property, or other thing of value *498 belonging to or under the custody or control of the public entity in which they hold office or are employed.
The evidence reflects that prior to the resolution of any criminal matter, Mr. Cannon authorized the payment of Bruce Cannon and Mr. Guzzardo’s legal fees, which was in direct conflict with LSA-R.S. 13:5108.3 B. According to the record, Bruce Cannon received a $10,000.00 reimbursement for legal fees from the Clerk’s Salary Fund, and Mr. Guzzardo’s attorney, James Boren, was paid from the Clerk’s Salary Fund the total sum of $31,633.25 for legal services. The evidence reflects that Bruce Cannon and Mr. Guzzardo were both indicted and subsequently, entered into plea bargains in state and federal court. Thus, Bruce Cannon and Mr. Guzzardo’s criminal matters were not resolved by an exoneration in accordance | nwith LSA-R.S. 13:5108.3 B, and therefore, they were not entitled to have their legal fees paid from the Clerk’s Salary Fund. Consequently, Mr. Cannon incorrectly authorized the use of monies from the Clerk’s Salary Fund and is personally obligated for the reimbursement of these monies ($41,633.25), in accordance with LSA-R.S. 42:1461 A.
CONCLUSION
LSA-R.S. 13:5108.3 unequivocally provides that an official or employee is not entitled to the payment of any legal fees associated with defense in a criminal matter “... unless: (1) The defendant in a criminal matter is acquitted or the proceedings are dismissed, and (2) [pjayment is authorized by a specific act of the legislature appropriating funds for such payment.” The restrictive language of the statute prohibits one from the use of public funds prior to a verdict of acquittal or dismissal, irrespective of the ultimate outcome of the matter. In this instance, Mr. Cannon violated the statutory dictates by prematurely withdrawing funds from the public coffers prior to the requisite acquittal or dismissal, not only for his own ongoing defense, but additionally for the benefit of other criminal defendants for whom a verdict had not been rendered.
For the foregoing reasons, the trial court’s judgment, finding that Mr. Cannon was not liable for the reimbursement of legal fees paid on behalf of Bruce Cannon and Mr. Guzzardo, is reversed and judgment is hereby rendered in favor of Doug Welborn, in his capacity as Clerk of Court for East Baton Rouge, against the defendant, H.M. “Mike” Cannon, in the additional sum of $41,633.25. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed to H.M. “Mike” Cannon.
REVERSED IN PART, AFFIRMED IN PART AND RENDERED.

. The unauthorized use of a movable and wire fraud charges evolved from the same factual situation.

. The judgment is silent as to the legal fees paid on behalf of Bruce Cannon and Mr. Guzzardo; however, in oral reasons, the trial court stated that it felt that Mr. Cannon was not personally obligated for those sums. Silence in a judgment as to any part of a demand made in litigation is construed as a rejection of that part of the claim. Harmon v. Schamberger, 536 So.2d 579, 581 n. 1 (La.App. 1st Cir.1988).

. Plea bargaining is defined as follows:
the process whereby the accused and the prosecutor in a criminal case work out a mutually satisfactory disposition of the case subject to court approval. It usually involves the defendant’s pleading guilty to a lesser offense or to only one or some of the counts of a multi-count indictment in return for a lighter sentence than that possible for the graver charge.
Black’s Law Dictionaiy 1037 (5th ed. 1979).